UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACY N. RIPPLE,

       Plaintiff,                            Civil Action No. 11-13308

v.                                    HON.  NANCY G. EDMUNDS
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Stacy N. Ripple brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #14] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB  March 15, 2007 and March 16, 2007 respectively, alleging disability as of March 1, 2007 (Tr. 33-34, 155-160).  After the initial

denial of the claim, Plaintiff requested an administrative hearing, held on May 6, 2010 before Administrative Law Judge ("ALJ") David N. Herstam (Tr. 35). Plaintiff, represented by attorney Elizabeth Warren, testified by video conference (Tr. 40-58). Medical Expert ("ME") Alvin Smith (Tr. 58-65) and Vocational Expert ("VE") Suzette Skinner also testified (Tr. 65-69). On May 21, 2010, ALJ Herstam found Plaintiff not disabled (Tr. 28). On June 28, 2011, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on July 28, 2011.

## **BACKGROUND FACTS**

Plaintiff, born September 24, 1980, was 29 when the ALJ issued his decision (Tr. 28, 155). She completed ninth grade and worked formerly as a car part inspector, cashier, cook, maintenance worker, production worker, and stocker (Tr. 177, 180). Her application for benefits alleges disability as a result of a borderline personality disorder and depression (Tr. 176).

### A.    **Plaintiff's Testimony**

*Plaintiff's counsel prefaced her client's testimony by stating that the disability claim was based on a diagnosis of bipolar disorder (Tr. 39).*

Plaintiff testified that she currently stood 5'5" and weighed 280 pounds (Tr. 40). She stated that her weight had fluctuated since becoming disabled on March 1, 2007 (Tr. 40). She reported that she currently lived in a one-family dwelling with her husband and two sons, adding that she wed her current husband approximately five months before the hearing (Tr. 41).

-2-

Plaintiff testified that she drove multiple times each day, typically driving to her friend's house or a store (Tr. 41-42). She reported that she completed only eighth grade and denied vocational training (Tr. 42). She admitted to working sporadically since applying for disability benefits (Tr. 42). She stated that since March 1, 2007, she worked for one month as a taxi driver and one month as a stocker (Tr. 44). She reported that she was "overwhelmed" with her work responsibilities as a taxi driver, alleging that she experienced problems balancing her work and family responsibilities (Tr. 44). She stated that she quit the stocker position without notice after perceiving that coworkers were criticizing her job skills (Tr. 44). She stated that her other former jobs ended when she "just didn't go back," upon becoming overwhelmed with balancing her work and personal life or experiencing interpersonal problems with coworkers (Tr. 45). She stated that a job inspecting car parts ended after she had an argument with another employee, noting that she "walked out" after the incident (Tr. 46). She indicated that the inspection job required her to lift up to 30 pounds (Tr. 47).

Plaintiff reported that her parents placed her in counseling when she was 13 but that she did not follow up with treatment (Tr. 47). She stated that she again began seeing a counselor around March, 2007 (Tr. 48). She indicated that she saw a therapist weekly, and a psychiatric nurse practitioner every two months (Tr. 49-50). She stated that a supervising psychiatrist had seen her "a couple of times" (Tr. 50). She alleged that as a result of bipolar disorder, she experienced restlessness, depression, suicidal thoughts, and anxiety (Tr. 51). She reported that she was hospitalized in 2008 after experiencing "a hard time deciphering

my dreams from reality"[1] (Tr. 52).  She stated that she was currently taking Depakote and Trazondone (Tr. 52).  She testified that she slept five to six hours each night (Tr. 52). Plaintiff reported that she ran away from home at the age of 12 or 13, stating that she had problems coping with her mother's health problems (Tr. 52).

Plaintiff reported that she began a typical day by waking her oldest child and preparing him for school, adding that she took him to school two to three days each week (Tr. 53).  She indicated that she spent the rest of her day taking care of household chores and caring for her preschool-aged son (Tr. 53).  She reported that she participated in activities outside the home (church, movies, and eating out) only once every two months due to anxiety being around large groups of people (Tr. 54).  Plaintiff testified that she began using alcohol and marijuana at the age of 13, but stopped the drug use at the age of 17 and stopped drinking around December, 2006 (Tr. 55-57).  She opined that problems with coworkers and anxiety would prevent her from performing any job (Tr. 57).

In response to questions by her attorney following the vocational expert testimony, Plaintiff alleged that because of her concentrational problems, she required the help of a friend to complete her household and childcare chores (Tr. 68).  She stated that she was unable to concentrate for more than 15 minutes at a time, adding that concentrational problems resulted in her inability to perform the taxi driver and stocker positions (Tr. 69).

---

[1]Plaintiff's medical records indicate that she received the inpatient treatment in October, 2007.

-4-

### B.    Medical Evidence[2]

### 1. Treating Sources

In September, 2006, Plaintiff reported weight gain, fatigue, and moodiness (Tr. 278).  Treating notes state that she declined to take antidepressive medication (Tr. 278).  In January, 2007, she was referred for psychological counseling (Tr. 276).  Plaintiff reported mood swings, overspending, and promiscuity (Tr. 275).  She reported that she controlled panic attacks by taking a warm bath or calling a friend (Tr. 275).  She alleged suicidal ideation but denied plans to commit suicide (Tr. 275).  Her affect was deemed appropriate (Tr. 275).

In February, 2007, Therapist Marjorie Nemerovski assigned Plaintiff a GAF of 56,[3] borderline personality traits, anxiety, depression, and alcohol abuse (Tr. 269, 274).  Nemerovski found that Plaintiff's alcohol abuse likely intensified mood swings (Tr. 273).  Nemerovski encouraged Plaintiff to stop all alcohol use (Tr. 264).  Plaintiff denied the current or past use of antidepressants (Tr. 272).  She reported that she had recently moved to Wisconsin on an impulse, giving up her apartment and leaving her car in Michigan (Tr. 272).  In March, 2007, Plaintiff again expressed reluctance to take antidepressive medication

---

[2]Records pertaining to conditions unrelated to the disability claim have been reviewed in full but are omitted from discussion.

[3]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

(Tr. 261).  She reported that she was currently living with various friends (Tr. 257).  Plaintiff stated that journaling on a regular basis helped stabilize her condition (Tr. 255).  In May, 2007, Plaintiff denied depression but stated that she was irritable (Tr. 623).

In October, 2007, Plaintiff was admitted for a four-day psychiatric hospitalization after reporting nightmares and nighttime delusions that her room was filled with spirits (Tr. 554).  She was assigned a GAF of 30[4] (Tr. 555).  Plaintiff stated that she was hopeful that a "diagnosis" would help her obtain SSI benefits (Tr. 576).  A November, 2007 psychiatric evaluation by Washtenaw Community Health Organization noted that Plaintiff, one month pregnant, was lethargic with other depressive symptoms after she ceased taking antidepressive medication (Tr. 317).  Plaintiff described herself as "an emotional train wreck" (Tr. 548).  In January, 2008, she again expressed reluctance to taking antidepressive medication (Tr. 382).  In March, 2008, she reported that Depakote elevated her mood (Tr. 326-327).  Her current status was characterized as "unstable" (Tr. 327).  Martha Young, C.N.P. assigned Plaintiff a GAF of 50[5] (Tr. 328).   The following month, Young deemed Plaintiff "cooperative" with spontaneous speech and "fair to good" judgment (Tr. 333-334).

---

[4]

A GAF score of 21-30 indicates that "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment OR inability to function in almost all areas. American Psychiatric Association." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

[5]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

Plaintiff appeared well-groomed with a normal affect (Tr. 398). In June, 2008, Plaintiff opined that she could work part time, but noted that she could not afford a babysitter for her son (Tr. 337). Plaintiff told therapist Miriam Kirscht that she was currently driving a taxi part time (Tr. 401).

The same month, a psychiatric evaluation performed on behalf of claim for state benefits found that Plaintiff was fully oriented, functioned independently, but by her own account, often got "off track" (Tr. 424). She was deemed "much improved" on current medications with a moderately limited ability to understand, remember, and carry out detailed instructions; maintain attention for extended periods; comply with attendance requirements; work in coordination with others; work without being distracted by psychological issues; and accept criticism (Tr. 425, 427-428).

In November, 2008, Kirscht noted that Plaintiff was well groomed and physically and emotionally capable of "shopping, laundry, and cleaning" (Tr. 433). Kirscht assigned Plaintiff a GAF of 50, noting problems with her "primary support group," occupational problems, and economic problems (Tr. 436). The same month, Young found that Plaintiff's judgment and insight were "good" (Tr. 439). Kirscht's December, 2008 notes state that Plaintiff was well-groomed and relaxed (Tr. 372). In April, 2009, Plaintiff reported that four weeks after giving birth, her home was destroyed by a grease fire (Tr. 359). Young noted that Plaintiff was "stressed" but "holding up well considering [the] circumstances" (Tr. 353). In August, 2009, Plaintiff was found to be "doing well" despite everyday stressors (Tr. 350). Young noted that Plaintiff was cooperative with a logical thought process (Tr. 348-349).

-7-

Plaintiff characterized her symptomology as a 3 on a scale of 1 to 10 (Tr. 442). Young noted that Plaintiff was "doing well despite the usual stress in her life" (Tr. 445). Notes from the following month also state that Plaintiff was cooperative with good insight and a logical thought process (Tr. 344). In October, 2009, Kirscht noted that Plaintiff had recently walked away from a job because she felt that coworkers were "putting all the work on her" (Tr. 358).

In November, 2009, Young and treating psychiatrist Daryl Robert Tanski, M.D. signed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced marked and extreme limitations in concentration and social interaction and marked limitations in adaptation (Tr. 667). The Assessment stated that Plaintiff was unable to perform even repetitive, simple work but could handle her own benefit funds (Tr. 668). A December, 2009 psychiatric examination report pertaining to a claim for state benefits completed by Young found the presence of a borderline personality disorder, agoraphobia, and a bipolar disorder, assigning Plaintiff a GAF of 48 (Tr. 703). The same month, treating notes state that Young deemed Plaintiff cooperative with good insight and judgment (Tr. 679). In May, 2010, Plaintiff stated that she was a little "manic," but had successfully abstained from alcohol use for four years (Tr. 700).

## 2.  Non-Treating Sources

In May, 2007, Thomas S. Rosenbaum, Ph.D. performed a psychological evaluation of Plaintiff, noting a childhood history of physical abuse and anger management problems (Tr. 289-290). Plaintiff reported that she was currently working to obtain her GED (Tr. 289). She reported multiple jobs, noting that she generally quit after disagreements with

coworkers, supervisors, or customers (Tr. 289). She remarked that she was able to keep a "factory job" for three months because she was working by herself (Tr. 289). She was assigned a GAF of 55 (Tr. 293).

The same month, Blaine Pinaire, Ph.D. completed a non-examining Psychiatric Review Technique, finding the presence of affective disorders, anxiety, a personality disorder, and a substance abuse disorder (Tr. 299. 302, 304, 306, 307). Pinaire found moderate impairment in activities of daily living, social functioning, and concentration, persistence, or pace, but no episodes of decompensation (Tr. 309). Pinaire concluded that Plaintiff was capable of unskilled work (Tr. 316). Pinaire also completed a Mental Residual Functional Capacity Assessment on behalf of the SSA (Tr. 295-298). She found moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining concentration for extended periods; completing a normal workweek without psychologically based interruptions; accepting criticism; getting along with coworkers; and adapting to workplace changes (Tr. 295-296). Pinaire concluded that Plaintiff was capable of unskilled work (Tr. 297).

### 3.  Material Submitted Subsequent to the Administrative Decision[6]

---

[6]

Where the Appeals Council denies a claimant's request for a review of an application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696-696 (6th Cir.1993). Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes

On August 26, 2010, Young submitted a statement on behalf of the claim for benefits, reiterating "a long history of psychosocial dysfunction" and that Plaintiff had "never been able to maintain gainful employment" (Tr. 710).

### C.    The Medical Expert Testimony

Medical Expert Alvin Smith ("Dr. Smith) noted that since the alleged onset of disability date, Plaintiff had been treated for an affective disorder, bipolar disorder, anxiety, and panic attacks with agoraphobia (Tr. 59).  In addition, he noted that treating records mentioned a "suggestion" of a personality disorder (Tr. 59).  He cited treating notes stating that Plaintiff had resumed drinking in February, 2007 (Tr. 59).  Dr. Smith found that Plaintiff's condition had significantly improved after beginning treatment (Tr. 60).  He acknowledged that Plaintiff received inpatient treating for three days in October, 2007 after experiencing an episode of decompensation but that she experienced significant improvement after an "early" 2008 medication change (Tr. 60).  Dr. Smith found that  Plaintiff  was "able to manage her activities independently" despite some anxiety upon leaving home (Tr. 60-61).  He noted that she was able to maintain friendships (Tr. 61).  Dr. Smith found that an assessment by Plaintiff's treating psychiatrist (showing "marked" work-related limitations) was inconsistent with treating notes showing "substantial improvement" and only "mild to

---

of determining whether remand is appropriate under the sixth sentence of § 405(g).

      Because Plaintiff does not rely on the latter provided material in arguing for remand and has not provided good cause for the late submission of this evidence, it cannot be considered in deciding whether remand is appropriate.

moderate fluctuation" in symptoms (Tr. 62).  Dr. Smith opined that the treating notes did not

support the conclusion that Plaintiff met or equaled a listing (Tr. 63).  Dr. Smith found that

Plaintiff experienced mild restrictions in activities of daily living; moderate restrictions in

concentration, persistence, or pace and social functioning; and one or two episodes of

decompensation (Tr. 84).  Dr. Smith stated that he "would limit her to simple repetitive

tasks," and only "incidental contact with co-workers, supervisors and the general public" (Tr.

64).  He found that she should be restricted to work involving elementary level skills (Tr. 65).

### D.      Vocational Expert Testimony

VE Skinner testified that Plaintiff's past relevant work as an auto parts inspector was

semiskilled and performed at the light exertional level[7] (Tr. 65).  The ALJ then posed the

following set of hypothetical restrictions:

> "[N]o more than the light category lifting 10 pounds regularly, 20 pounds
> occasionally.  Standing six hours of an eight-hour day, sitting six hours of an
> eight-hour day.  Postural, no ropes, ladders, or scaffolds, and no balancing.
> There would be no manipulative limitations.  And in regards to reading,
> writing, and math, or calculations nothing more difficult than elementary
> school knowledge.  No working at heights.  And because of a lack of work
> experience no working with hazardous machinery.  Only simple repetitive
> tasks.  Only incidental contact with co-workers, supervisors, and the public.
> That would mean no . . . position that would involve complex instructions or
> detailed instructions (Tr. 65-66).

---

[7]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at
a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that
exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent
lifting or carrying of objects weighing up to 50 pounds.

Based on the above restrictions, VE found that Plaintiff would be unable to perform her past relevant work but could work as a cleaner (4,000 jobs in the State of Michigan); plumbing hardware assembler (800); and small products assembler (1,000) (Tr. 67). The VE found that if the individual were required to take unscheduled 30-minute breaks during the course of the workday, all work would be precluded (Tr. 67). She testified that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 68).

### E.   The ALJ's Decision

Citing Plaintiff's treating records, ALJ Herstam  found that Plaintiff experienced the severe impairments of an affective disorder (bipolar), anxiety disorder, personality disorder, alcohol abuse, and obesity but that none of the impairments met or equaled a listed impairment under 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 20-21). He found that Plaintiff experienced only mild restrictions in activities of daily living but moderate deficiencies in social functioning and concentration, persistence, or pace (Tr. 22). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> "[N]o climbing on ropes, ladders, or scaffolds and no balancing or working at heights or with hazardous machinery with mental limitations whereby the claimant cannot perform work that involves reading and writing at more than elementary school knowledge, more than simple repetitive tasks with no detailed or complex instructions or tasks, and not more than incidental contact with co-workers, supervisors, and the public" (Tr. 23).

Citing the VE's findings, the ALJ found that Plaintiff could not perform any past relevant

work but could work as a cleaner/housekeeper, plumbing/hardware assembler, and a small product assembler (Tr. 27).

The ALJ discounted Plaintiff's allegations of disabling concentrational problems, noting that consultive examination findings showed that she was fully oriented and exhibited a good memory (Tr. 24). He cited treating records stating that Plaintiff had self-assessed her symptomology at a 3 on a scale of 1 to 10 (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

-13-

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physician Analysis

Plaintiff argues first that the November, 2009 assessment coauthored by Young and Dr. Tanski showing marked and extreme limitations psychological limitations ought to have been adopted by the ALJ. *Plaintiff's Brief* at 3-6 (citing Tr. 667-668).  She also contends that the ALJ erred by failing to state the weight, in any, he accorded the discounted findings.

-14-

*Id.*  On a related note, she argues that while the ALJ agreed with Young's earlier June, 2008 findings of only moderate impairments, he did not include all of those findings in either the hypothetical question or RFC.  *Id.* at 6-8 (citing SSR 06-3p).

Plaintiff is correct that an uncontradicted, well supported treating source opinion "must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (citing *Wilson v. Commissioner of Social Sec.,* 378 F.3d 541, 544 (6th Cir.2004)(internal quotation marks omitted)).  However, a review of the record shows that Dr. Tanski's findings were not "uncontradicted" and in fact stood at odds with treating records by members of his own staff.  Dr. Tanski's finding of  marked limitations in completing a workday without psychologically based interruptions, adapting to workplace changes, and responding to criticism from supervisors (along with extreme impairment in other categories) stands at odds with psychological treating notes stating that Plaintiff was "cooperative" with "fair to good judgement" (April, 2008), well-groomed with normal affect (May, 2008)  able to perform a part-time job (June, 2008), capable of shopping, laundry, and cleaning (November, 2008), "doing well" despite everyday stressors (August, 2009), and demonstrated good insight and judgment (December, 2009)(Tr. 333-334, 337, 350, 398, 433, 679).[8]  Dr. Tanski's finding

---

[8]

The Psychiatric Review Technique terminology defines a *marked* limitation  as one which "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 CFR Pt. 404, Subpt. P, App. 1.  A marked impairment in social functioning in "work situations" would typically affect "interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers."20 CFR Pt. 404, Subpt. P, App. 1.

of marked and extreme limitations is particularly suspect given that one month after co-authoring the assessment, Young deemed Plaintiff's insight and judgment "good" (Tr. 679). The findings are also undermined by the fact that although Plaintiff remained in therapy for several years, Dr. Tanski examined her on only two occasions (Tr. 50).

Likewise, Plaintiff's argument that the ALJ did not provide sufficient reasons for rejecting Dr. Tanski's opinion is without merit.[9] The ALJ reasonably found that Dr. Tanski's December, 2009 assessment was "inconsistent" with Plaintiff's "progress being made with treatment and medications" (Tr. 26). The ALJ's take on the treating psychiatrist's opinion is supported by Dr. Smith's testimony that Dr. Tanski's assessment stood at odds with treating notes showing a "substantial improvement" in symptoms (Tr. 62). As to the weight accorded the November, 2008 opinion, the ALJ stated that he accepted the assessment "as evidence of a treating source opinion" that Plaintiff was "to a degree mentally functionally limited" but noted that he found a lessor degree of functional limitation (Tr. 26).

In regard to Young's June, 2008 opinion, Plaintiff cites the ALJ's statement that the June, 2008 assessment of moderate limitation was "essentially consistent" with the RFC. *Plaintiff's Brief* at 7 (citing Tr. 25). Plaintiff points out that Young's June, 2008 assessment included a finding of moderate limitations in the ability to conform to attendance policies and

---

[9] "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* 378 F.3d at 544; 20 C.F.R. 1527(d)(2).

accept instruction (Tr. 426-427), noting that these findings were not included in the hypothetical question or RFC.   However, the ALJ did not purport to adopt every one of Young's discrete findings.  Rather, he used Young's opinion to illustrate that Plaintiff did not experience greater than moderate limitations when "medication compliant" (Tr. 25).  Further, while the ALJ was required to consider the opinion of Young, a certified nurse practitioner, her findings were not entitled to the deference accorded a treating physician or other "acceptable medical sources."  SSR 06–03p, 2006 WL 232939, *2.  As such, the ALJ was not required to explain his reasons for adopting only a portion of  Young's findings.  As discussed further below, because the ALJ's inclusion of certain limitations in the hypothetical question and RFC (and the exclusion of others) is well explained and well supported, remand on this basis is not warranted.

### B.  The Hypothetical Question/RFC

Plaintiff argues further that the hypothetical limitations posed to the VE did not account for her moderate limitations in concentration, persistence, or pace ("CPP").  *Plaintiff's Brief* at 8-10.   Citing *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010), she contends that the hypothetical restriction of "simple, repetitive" tasks did not fully address her moderate deficiencies in CPP.  *Plaintiff's Brief* at 8 (citing Tr. 66).  Revisiting the treating physician argument, she contends that Dr. Tanski's finding of marked and extreme limitations ought to have been included in the hypothetical question and RFC.  *Plaintiff's Brief* at 9-10.

A hypothetical question constitutes substantial evidence only if it accurately portrays

-17-

the individual's physical and mental impairments.  *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987).  While the Sixth Circuit has  rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments."   *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).

Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question.  *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.).  The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error.  Cases from this district and elsewhere have held that "unskilled work," or "simple work" are generally insufficient to account for moderate deficiencies in CPP.  *Edwards, supra,* 383 F.Supp.2d at 931; *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, *15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996).  However, an ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language  in the hypothetical. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001);  *Webb, supra,* 368 F.3d at 633**.**

In *Ealy, supra,* the Court found that the hypothetical limitations of "simple repetitive tasks" was insufficient to account for the claimant's moderate deficiencies in CPP.  However, *Ealy* does not hold that the terms "simple, repetitive," or similar descriptives are

-18-

intrinsically inadequate to address moderate CPP deficiencies.  Rather, *Ealy* held that the hypothetical limitations of "simple, repetitive"(drawn from a non-examining medical source) impermissibly truncated the same source's overall conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516.  The position that "simple and repetitive" or synonymous terms are *always* insufficient to address moderate CPP deficiencies (even where the record does not support more stringent limitations) reflects an erroneous reading of *Ealy.*

  To the contrary, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations.  *Smith, supra*; *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824,  *11   (E.D.Mich.2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich.  2008)).

In contrast to *Ealy,* the  hypothetical limitations of "simple repetitive" adequately reflect the present Plaintiff's moderate deficiencies in CPP.  Instead of drawing hypothetical limitations from either the treating or non-treating sources found in the file, the ALJ "went the extra mile" by ordering medical expert testimony.  After reviewing Plaintiff's psychological treating history, the medical expert found Plaintiff's  moderate restrictions in CPP and social functioning would restrict her to "simple repetitive tasks," only "incidental contact with co-workers, supervisors and the general public," and jobs not requiring more than an elementary school education. (Tr. 64-65).  In other words, after reviewing the treating

-19-

records, Dr. Smith found that despite moderate limitations in CPP, a restriction to "simple repetitive tasks" was sufficient to account for Plaintiff's concentrational problems. The ALJ's subsequent question to the VE adopted Dr. Smith's testimony almost exactly by limiting Plaintiff to "simple repetitive tasks" and "[o]nly incidental contact with co-workers, supervisors, and the public"(Tr. 66). In conformance with Dr. Smith's preclusion on work requiring more than elementary skills, the ALJ also precluded work "that would involve complex instructions or detailed instructions" (Tr. 66).

Moreover, the ALJ did not err by omitting Dr. Tanski's findings from the hypothetical question or RFC. Having discounted Dr. Tanski's finding of marked and extreme limitations in the treating physician analysis, the ALJ was not required to include the rejected findings at Step Five of his analysis. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include discredited findings in the hypothetical question). Because substantial evidence in the form of Dr. Smith's testimony supports the finding that the "simple repetitive tasks" limitations was sufficient to account for Plaintiff's moderate CPP deficiencies, remand on this basis is not warranted.

In closing I note that while Plaintiff experienced some degree of limitation as a result psychological problems, the conclusion that she experienced significant improvement from therapy and medication is generously supported by the record. Moreover, I find no error, harmless or otherwise, in the ALJ's discussion of the treating records or the credibility determination. Based on a review of this record, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be

disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend  that Defendant's Motion for Summary Judgment [Doc. #14] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: July 3, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 3, 2012.

s/Johnetta M. Curry-Williams
Case Manager